UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BETTY HENRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-CV-0711-CVE-SAJ |
| ) | |
| PRINCIPAL LIFE INSURANCE ) | |
| COMPANY[1], ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff filed this action seeking to recover benefits and enforce her rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Plaintiff challenges The Principal Life Insurance Company's ("Principal" and/or "defendant") decision to deny long-term disability ("LTD") benefits as arbitrary and capricious.

**I.**

Plaintiff was employed by Homeward Bound Review Panel ("Homeward") as an advocate-guardian ad litem. Plaintiff's job was primarily an office position; however, she was often required to visit clients at their homes and at the hospital. The physical requirements of the job included: occasional (1-33%) lifting and carrying of five pounds or less, occasional (1-33%) bending and squatting to access files, frequent typing and repetitive actions with her hands, and driving to visit clients on a regular basis. Admin. Rec. at 157. Homeward stated that, during an eight hour day, plaintiff spent three hours sitting, two hours standing, and two hours walking. Id.

---

[1] Defendant's Motion to Substitute Party (Dkt. # 29) was granted, and Principal Life Insurance Company was substituted as a defendant (Dkt. # 36). The case caption was amended accordingly.

As an employee of Homeward, plaintiff was eligible to enroll for both short and long term disability coverage through her employer's group policy. On September 2, 1998, plaintiff completed an enrollment form, a medical authorization allowing Principal to request medical records, and a health statement. Id. at 161, 163, 165. On this form, in a section that was completed by Principal, it notes that the enrollment form was for health, dental and short term disability insurance. Id. at 161. However, Principal sent several letters to plaintiff requesting medical records with regard to plaintiff's request for LTD coverage through her employer. Id. at 167-69. Plaintiff did not respond to these requests for additional information, and Principal closed her file regarding LTD coverage. Id. at 167.

The long term disability insurance plan ("Plan") for Homeward's employees is insured and administered by Principal, meaning that Principal acts as the fiduciary for this ERISA plan and as the payor for any benefits under the Plan. Homeward paid the full insurance premium for its employees for both short and long term disability coverage. The Plan defines total disability as follows:

> A member who is not working for wage or profit and solely and directly because of sickness or injury:
>
> a. during the Elimination Period and the two year period immediately following the Elimination Period, is unable to perform the majority of the material duties of his or her normal occupation; and
>
> b. after completing the Elimination Period and the two year period immediately following the Elimination Period, is unable to perform the majority of the material duties of any occupation for which he or she is or may reasonably become qualified based on education, training, or experience.

Id. at 78-79. The policy is clear that the disability must begin during the effective dates of the insurance policy, not before. Id. at 96. The Plan also provides that Principal has "complete

discretion to construe or interpret the provisions of this group insurance policy, to determine eligibility for benefits, and to determine the type and extent of benefits, in any, to be provided." Id. at 82. Thus, Principal is granted discretion to manage the plan.

Plaintiff initially filed a claim for disability benefits on April 23, 2002, stating she was physically unable to work after April 10, 2002. Principal set up a claim file for plaintiff, noting that plaintiff was covered from October 7, 1998 and her last day of work before filing the claim was April 10, 2002. See id. at 3. The case plan also states that plaintiff had been complaining of abdominal, back, and heart pain, and that plaintiff had been to seven physicians for treatment. One of plaintiff's physicians, Thomas L. Ashcroft, M.D., diagnosed plaintiff with arthritis of the lumbar spine, diverticulosis, and cardiac problems. Id. at 688-89. Plaintiff had back surgery on July 11, 2002, which she immediately reported to Principal. Id. at 698. Upon receipt of the medical records following the surgery, Principal agreed to pay short term disability benefits to plaintiff through July 31, 2002. Principal requested additional treatment records from David A. Fell, M.D., plaintiff's back surgeon. Id. at 445. Principal also requested information from plaintiff's employer regarding her job requirements and her inability to perform her job duties due to her medical condition. Id. at 159-60. Upon request for further information, Dr. Fell indicated that he believed plaintiff would be able to return to work by October 10, 2002. Id. at 419. On October 1, 2002, Thomas Dodson, M.D., performed nasal surgery on plaintiff for a variety of conditions. Id. at 377-79. Dr. Dodson advised Principal that the normal recovery period for this kind of surgery would be two weeks, and that he had restricted plaintiff from doing any heavy lifting or bending. Id. at 397.

On October 15, 2002, Principal denied plaintiff any further disability benefits, either long or short term, after October 10, 2002. Principal determined that the medical evidence indicated that

plaintiff could perform the essential functions of her job after October 10, and that plaintiff was not entitled to disability payments beyond that date. Id. at 233. Principal sent plaintiff notice of its determination to deny plaintiff disability benefits on October 28, specifically denying benefits on the ground that plaintiff no longer met the definition of disability provided by the Plan. Id. at 227. Dr. Ashcroft sent Principal a letter stating his opinion that plaintiff was "100% totally disabled and probably may continue to be 100% permanently, totally disabled, but a few more weeks must pass before one can be sure that she will never be able to go back to work." Id. at 317. Principal treated this letter as a request to reconsider its decision to deny plaintiff short term disability benefits after October 10, and requested additional medical records from three of plaintiff's physicians. Id. at 225. Based on the lack of additional medical information substantiating plaintiff's claim that she could not perform the material duties of her job, Principal denied plaintiff's request for reconsideration. Id. at 213-15.

Plaintiff sought further treatment for back pain and visited a back specialist, Mark Hayes, M.D. Dr. Hayes ordered plaintiff not to return to work until she completed a prescribed regimen of physical therapy. Id. at 300. Plaintiff also sought treatment from a chiropractor, Thomas Cate, D.C., who filed a claim with Principal for LTD benefits on behalf of plaintiff, finding that she suffered from a "severe limitation of functional capacity" and that plaintiff was "incapable of minimal (sedentary) activity." Id. at 305. The claims agent in charge of plaintiff's file did not feel that she could reverse her decision to deny LTD benefits, but instead, referred plaintiff's claim to another claims reviewer. Id. at 208. Dr. Cate responded to a request for information from the new claims reviewer, and on June 11, 2003, he stated that he still believed that plaintiff should be restricted from returning to work. Id. at 275-76. Dr. Cate stated that "[plaintiff] is listed between

a Class 4 and 5 on the physical impairment directly out of the Federal Dictionary of Occupational Titles. She is severely limited in her functional capacity and needs to participate in a sedentary lifestyle." Id. at 275. On August 26, 2003, Principal informed plaintiff it would pay her short term disability benefits through exhaustion and long term disability benefits through December 27, 2002. Id. at 665.

Plaintiff disputed the outcome of her appeal, and filed a petition in state court on August 26, 2003. After filing an amended petition in state court, plaintiff served Principal on September 24, and Principal filed a notice of removal to this court on October 15, 2003. However, activity did not cease on plaintiff's disability benefits claim. During September 2003, Principal continued to request medical records from plaintiff's physicians, apparently unaware that plaintiff had filed a lawsuit in state court. Also, plaintiff returned to work at Homeward on August 1, 2003 and remained at work until November 7, 2003. Plaintiff missed a total of 9.69 days during that time period. Id. at 951. On November, 14, 2003, Homeward filed a disability claim on behalf of plaintiff, claiming that plaintiff was totally disabled and was entitled to LTD benefits. Id. at 954. Homeward listed the effective date of plaintiff's disability insurance coverage as September 7, 1998.

On April 1, 2004, almost eight months after plaintiff originally filed her lawsuit, Principal denied that plaintiff had ever had LTD insurance. Principal stated:

> [T]his letter is to advise you that we have recently discovered that you did not elect Long Term Disability coverage when you enrolled for group insurance coverage through your employer, Homeward Bound Review. Specifically, you completed an Enrollment Form dated September 2, 1998 (a copy of which is attached) in which you elected Life, Short Term Disability, Medical and Dental Insurance coverage, but did not elect Dependent Life, Long Term Disability, Supplemental Life, Dependant Medical or Dependant Dental Insurance coverage. A Health Statement dated September 2, 1998 was submitted for approval. However, as reflected in letters to you from our Medical Underwriting area of Group Operations department dated October 20, 1998, November 18, 1998 and December 18, 1998 (copies of which are

5

>      attached), your request was closed because you did not provide the information required to process your request.

Id. at 929. The issue of LTD insurance coverage for plaintiff did not arise until well after plaintiff originally filed her claim. At the time plaintiff filed her claim, the only issue for the court to decide was plaintiff's entitlement to continued LTD benefits. Since plaintiff originally filed her claim, Principal has amended its answer to include a counterclaim to recover any amounts it may have erroneously paid to plaintiff. The threshold issue, upon which further review of plaintiff's claim hinges, has now become whether plaintiff ever had any LTD insurance.

## II.

As a preliminary matter the Court must establish the proper standard of review for plaintiff's ERISA claim. As a plan beneficiary, plaintiff has the right to federal court review of benefit denials and terminations under ERISA. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Specifically, 29 U.S.C. § 1132(a)(1)(b) grants plaintiff the right "to recover benefits due to [her] under the terms of the plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." The default standard of review is de novo. However, when a plan gives the claims administrator discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a challenge under section 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard. See Firestone, 489 U.S. at 115 (courts must apply the appropriate standard "regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in

6

determining whether there is an abuse of discretion.").

Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, a "reduction in deference is appropriate" where there is an inherent or proven conflict of interest. Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1006 (10th Cir. 2004). If plaintiff shows a conflict of interest, deference to the administrator's decision is reduced and the burden shifts to Principal to prove "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Id.

In a conflict of interest situation, the determinative inquiry is whether the administrator's decision was supported by substantial evidence. " 'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].' Substantial evidence requires 'more than a scintilla but less than a preponderance.' " Sandoval v. Aetna Life & Cas. Inc. Co., 967 F.2d 377, 382 (10th Cir. 1992) (citations omitted). "The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." Allison v. Unum Life Ins. Co. of America, 381 F.3d 1015, 1022 (10th Cir. 2004). The Court considers the record as a whole, but it considers only that information available to the plan administrator at the time the decision was made. Hall v. Unum Life Ins. Co. of America, 300 F.3d 1197, 1201 (10th Cir. 2002); Chambers v. Family Health Plan Corp., 100 F.3d 818, 823 (10th Cir. 1996) ("The reviewing court may consider only the evidence that the administrators themselves considered."). The Court must "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)

(internal citations and quotation marks omitted). The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence. See Caldwell v. Life Ins. Co. of N. America, 287 F.3d 1276, 1282 (10th Cir. 2002). Yet, the Court "will not set aside a benefit decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co., Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

The proper standard of review in this case is the "arbitrary and capricious" standard discussed by the Tenth Circuit in Fought. The parties are in agreement that Principal had discretionary authority under the Plan to make all benefits and coverage determinations and neither party has suggested that de novo review would be proper in this case. Based on the record, it is clear that Principal was operating under an inherent conflict of interest, given Principal's dual role as fiduciary and insurer under the Plan. Therefore, the Court will apply an "arbitrary and capricious" standard of review, but defendant must demonstrate the reasonableness of its decision to deny coverage by showing that the conflict of interest did not influence its decision and that the coverage determination was supported by substantial evidence.

### III.

Although the parties have not disputed the contents of the administrative record, the Court has conducted a thorough review of the administrative record and determined that much of the material was not before Principal at the time it decided to terminate plaintiff's LTD benefits after December 27, 2002. Principal made a final determination on August 26, 2003 regard plaintiff's coverage and it was that decision that was the subject of the ERISA claim plaintiff filed on the very

same day. Principal has not filed a motion to supplement the administrative record with additional material dated after August 26, 2003.

Tenth Circuit precedent is clear that in cases where the district court is reviewing an administrator's decision under a de novo standard of review, supplementation may be allowed when the additional information would be necessary to conduct a thorough review of plaintiff's claim. Ray v. Unum Life Ins. Co. of America, 314 F.3d 482, 487-88 (10th Cir. 2002); Hall v. Unum Life Ins. Co. of America, 300 F.3d 1197, 1202-03 (10th Cir. 2002). However, when the court applies an arbitrary and capricious standard, review is strictly limited to the evidence before the plan administrator at the time it made its benefits decision. Kimber v. Thiokol Corp., 196 F.3d 1092 (10th Cir. 1999) ("'[I]n reviewing decisions of plan administrators under the arbitrary and capricious standard, the reviewing court may consider only the evidence that the administrators themselves considered' on or before the final decision denying benefits") ; Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 380 (10th Cir. 1992) ("In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision."); see also Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2nd Cir. 1995) (adopting rule that district court may consider only the evidence before the plan administrator at the time the decision denying coverage was made when arbitrary and capricious standard of review is applied); Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d 1547, 1550 (11th Cir. 1994) ("Application of the arbitrary and capricious standard requires us to look only to the facts known to the administrator at the time the decision was made to deny [plaintiff] coverage").

The parties have agreed that the arbitrary and capricious standard of review applies in this case, and therefore, the Court may consider only the evidence before the plan administrator at the time it reached its decision to deny plaintiff benefits on August 26, 2003.

## IV.

The first issue that the Court must address, before considering the reasonableness of Principal's decision to terminate LTD benefits after December 27, 2002, is whether plaintiff ever had any LTD insurance through Principal. Based on the administrative record as of August 26, 2003, there was no dispute at that time that plaintiff was covered under a group LTD plan issued by Principal. In fact, Principal had agreed to pay plaintiff limited LTD benefits through December 27, 2002. Admin Rec. at 665. Principal did not decide that plaintiff was uninsured until April 1, 2004. Id. at 929.

Considering that the existence of any insurance is a key issue that will affect any ruling by this Court on Principal's decision to terminate benefits after December 27, 2002, the Court has no choice but to remand the case for reconsideration by Principal. This issue will conclusively determine plaintiff's ERISA claim and Principal's counterclaim for recoupment of benefits it may have wrongfully paid to plaintiff. Principal did not request permission from the Court to supplement the administrative record with material dated after its denial of benefits on August 26, 2003, nor is it clear from the information before the Court that plaintiff ever had an opportunity to file an internal appeal with Principal to challenge its April 1, 2004 decision that plaintiff was uninsured. Remand is proper in cases where the procedural deficiencies in the administrative process preclude the court from reaching the substantive issues underlying plaintiff's claim. Caldwell v. Life Ins. Co. of North America, 287 F.3d 1276, 1288 (10th Cir. 2002) (remand to clarify record only unnecessary when

10

the administrator's actions were arbitrary and capricious or "'the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.'").

Plaintiff must be given a chance to fully appeal Principal's decision to deny the existence of insurance coverage before the issues in plaintiff's complaint become ripe for adjudication. As the case currently stands, the administrative record should contain material dated before August 26, 2003 only, and therefore, the Court can not rule on whether Principal's finding that plaintiff was uninsured was arbitrary and capricious. The case must be remanded to give the parties an opportunity to create an adequate record on the issue of whether plaintiff was insured, as a ruling on that issue would be premature without a complete record on the issue.

**IT IS THEREFORE ORDERED** that plaintiff's claim is remanded to allow plaintiff a full and fair opportunity to internally appeal defendant's decision that plaintiff was not covered by long term disability insurance through her employer's group policy and for the parties to create an adequate record on this issue.

**DATED** this 30th day of May, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT